## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| VEOLIA WATER CONTRACT OPERATIONS USA, INC., Plaintiff, v. JASON O'BRIEN and JOHN MARCIN, Defendants. | Civil Action No. 24-cv-10180 (JXN)(AME) <u>**OPINION**</u> |

**NEALS**, District Judge:

This matter comes before the Court on Plaintiff Veolia Water Contract Operations USA, Inc.'s ("Plaintiff" or "Veolia") motion for a preliminary injunction (ECF No. 3), and Defendants Jason O'Brien ("O'Brien") and John Marcin's ("Marcin") (collectively, "Defendants") motion to dismiss the Amended Verified Complaint (ECF No. 12) ("Amended Verified Complaint" or "AVC"), for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). (ECF No. 40). Jurisdiction and venue are proper pursuant to 28 U.S.C. §§ 1332 and 1391(b), respectively. The Court has carefully considered the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, Defendants' motion to dismiss (ECF No. 40) is **DENIED without prejudice** to allow the parties to conduct jurisdictional discovery. Plaintiff's motion for a preliminary injunction (ECF No. 3) is **ADMINSTRATIVELY TERMINATED**, subject to the results of the Court's ruling on the motion to dismiss for lack of personal jurisdiction.

## I.    **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff, a Delaware corporation with its principal place of business in New Jersey,

provides water and wastewater operations and maintenance ("O&M") services to municipal and industrial customers throughout the country. (AVC ¶¶ 14, 25). In 2022, the ultimate corporate parent of Suez Water Environmental Services Inc ("Suez"), a Delaware corporation with its principal place of business in New Jersey, merged with the ultimate corporate parent of Veolia. (Declaration of Whitney Fawcett ("Fawcett Decl."), ECF No. 46 at ¶ 4). As part of the merger, Suez changed its name to Veolia. (*Id.* at ¶ 5; see also AVC ¶ 14 ("Prior to a 2022 corporate acquisition, Veolia Water Contracts, Inc. operated under the name Suez Water Environmental Services Inc. ("Suez").").

### A. **Defendants' Careers with Suez and Veolia**

Plaintiff's claims arise from the alleged actions of two former employees—O'Brien and Marcin. (*See generally* AVC). From 2000 to 2007, O'Brien worked for AOS Operating Services, which was acquired by United Water in 2007, and later assumed the name Suez. (Supplemental Declaration of Jason O'Brien ("O'Brien Supp. Decl.") ECF No. 40-2 at ¶¶ 10-11). While working for Suez, O'Brien's office was in Newtown, Connecticut. (*Id.* at ¶ 12). In December 2019, Suez promoted O'Brien to the position of General Manager/Vice President for the Northeast. (Declaration of Kendra Morris ("Morris Decl.") ECF No. 45-1 at ¶ 3; O'Brien Supp. Decl. ¶ 14). The offer letter, which O'Brien signed and accepted, included a prohibition of the solicitation of Suez's employees and customers for a twelve-month period. (Morris Decl., ECF No. 45-2, Ex. A; O'Brien Supp. Decl., Ex. A). As the General Manager/Vice President, O'Brien was responsible for over 100 New Jersey employees and "all municipal water projects in the northeast, including those in Bayonne, Rahway, Orange, Hoboken, and Jersey City, New Jersey." (Morris Decl. ¶ 8; O'Brien Supp. Decl. ¶ 14). In this position, O'Brien was also responsible for over 100 New Jersey employees. (Morris Decl. ¶ 8).

In 2022, O'Brien continued working for Suez under its new name, Veolia, and his position changed to Regional Vice President, Northeast Region. (O'Brien Supp. Decl. ¶¶ 20, 24; Morris Decl. ¶ 15). According to O'Brien, he no longer oversaw all water projects in the Northeast region but instead oversaw some projects in Connecticut and two projects in Massachusetts. (O'Brien Supp. Decl. ¶ 24; *see also* Morris Decl. ¶ 20). O'Brien directly reported to Kendra Morris ("Morris"), the former President, Northeast Region, Municipal Water for Veolia, who operated out of Veolia's headquarters in Paramus, New Jersey. (Morris Decl. ¶¶ 1, 16-17). O'Brien ultimately informed Veolia that he was resigning to work for Inframark, LLC ("Inframark"), one of Veolia's key competitors in the municipal water and wastewater O&M services market in the United States. (AVC ¶¶ 1, 49). O'Brien currently works as the Vice President of the Operations and Maintenance Division at Inframark. (O'Brien Supp. Decl. ¶ 8).

Marcin began working for United Water in 2005, prior to it assuming the name Suez in 2007. (Supplemental Declaration of John Marcin ("Marcin Supp. Decl.") ECF No. 40-3 at ¶ 10). Marin worked primarily out of his home office in Lexington, Massachusetts. (*Id.* at ¶ 13). In 2020, Marcin became the Area Manager for the Norwalk, Connecticut project, whereby he was responsible for managing Suez's Norwalk project and reported to O'Brien. (*Id.* at ¶¶ 14, 37). The offer letter for the promotion prohibited the solicitation of employees and customers for a twelve-month period. (Morris Decl., ECF No. 45-5, Ex. Y; Marcin Supp. Decl., Ex. A). Marcin's "principal work location moved to Norwalk, Connecticut." (Marcin Supp. Decl. ¶ 14). In this position, Marcin "regularly interacted with the finance team, which operated out of Paramus, New Jersey, and participated in monthly budget calls that were conducted and led by supervisory personnel from Paramus, New Jersey." (Morris Decl. ¶ 39).

After the Suez-Veolia merger, Marcin continued his employment with Veolia. (AVC ¶ 54;

Marcin Supp. Decl. ¶ 19). However, the parties dispute whether Marcin accepted the promotion of Senior Director of Business Development for the Northeast region in October 2023. (*Compare* AVC ¶ 55 ("On or about October 26, 2023, Veolia promoted Mr. Marcin to the position of Senior Director of Business Development for the Northeast region."), *and* Morris Decl. ¶ 43-46 (attesting Marcin accepted the promotion and worked as the Senior Director of Business Development), *with* Marcin Supp. Decl. ¶¶ 32-48 (attesting he exchanged emails regarding the draft offer letter, but never signed the draft offer letter)). Like his offer letter for Area Manager, the offer letter for Senior Director of Business Development included language prohibiting the solicitation of employees and customers for a twelve-month period. (Morris Decl., ECF No. 45-5, Ex. Z). On December 18, 2023, Marcin notified Veolia that he was resigning to take a position with Inframark. (AVC ¶ 60). Currently, Marcin works as a Business Developer at Inframark. (Marcin Supp. Decl. ¶ 8).[1]

## B.  Defendants' Actions on Behalf of Inframark While Working for Veolia

According to the Amended Verified Complaint, Defendants began working on behalf of Inframark while still employed and being paid by Veolia. (AVC ¶ 65). Plaintiff alleges Defendants were "part of the team supporting Veolia's discussions" with Fall River, Massachusetts to extend its O&M contract. (*Id.* at ¶ 66). Notwithstanding, once Defendants "decided that they were leaving Veolia to join Inframark, they communicated with Fall River and encouraged it to end its exclusive negotiations with Veolia and terminate the contract, and to instead issue a public [Request for Proposal (RFP)] with the expressed hope that the contract would be awarded to Inframark, where they would soon work." (*Id.* at ¶ 68). Plaintiff alleges Defendants were "actively involved in and supported *Inframark's* efforts to bid on Fall River," and ultimately, the Fall River contract was

---

[1] According to the Amended Verified Complaint, Defendants were paid by Veolia until January 5, 2024. (AVC ¶¶ 6, 50, 62).

awarded to Inframark in March 2024. (*Id.* at ¶¶ 69, 71).

### C. Defendants' Continuing Violations of the Non-Solicitation Provisions

In February 2024, O'Brien allegedly visited Veolia's contract partner, Pawtucket, Rhode Island, a customer of Veolia for 20 years, to obtain the contract for Inframark. (*Id.* at ¶¶ 74-75). Defendants both worked on the Pawtucket project while employed by Veolia. (*Id.* at ¶ 76). Throughout the Pawtucket RFP process, Defendants allegedly "actively worked to convince the municipality to award the project to Inframark, in direct violation of their non-solicitation agreements." (*Id.* at ¶ 78; *see also id.* at ¶ 79). Notwithstanding Defendants' efforts, Pawtucket awarded the contract to Veolia. (*Id.* at ¶ 80). Additionally, Defendants have spoken to "decision-makers in Nowalk" on behalf of Inframark. (*Id.* at ¶¶ 81-82).

Beyond their communications with customers, Defendants have also allegedly continuously engaged "in a pattern of repeated and intentional efforts to solicit Veolia employees to resign and instead work for Inframark." (*Id.* at ¶ 83). The Amended Verified Complaint includes multiples instances where Defendants reached out to Veolia employees to convince them to join Inframark. (*See id.* at ¶¶ 84-102). Plaintiffs allege that three Veolia employees have left and joined Inframark. (*Id.* at ¶¶ 86, 96-97, 99-100).

### D. Procedural History

On October 31, 2024, Plaintiff filed its Verified Complaint against Defendants. (ECF No. 1). That same day, Plaintiff filed an *ex parte* application for an Order to Show Cause and application for a preliminary injunction against Defendants. (ECF No. 3). The Court subsequently denied Plaintiff's request for an Order to Show Cause "for failure to meet the heightened standards of [Federal Rule of Civil Procedure] 65" because "Plaintiff . . . failed to make a clear and specific showing of good and sufficient reasons why expedited treatment is warranted." (ECF No. 8). The

Court ordered the Clerk of Court to file the application and ordered that the matter be treated as a motion. (*Id.*)

Plaintiff subsequently filed an Amended Verified Complaint against Defendants on November 12, 2024. (ECF No. 12). The Amended Verified Complaint raises three causes of action: (i) breach of duty of loyalty (Count I); (ii) breach of —non-solicitation of customers (Count II); and (iii) breach of contract—non-solicitation of Veolia employees (Count III). (*See generally id.*)

Thereafter, Defendants opposed the motion for a preliminary injunction, (ECF No. 19), to which Plaintiffs replied. (ECF No. 27). Upon receiving permission from the Court, (ECF No. 35), Defendants filed a sur-reply. (ECF No. 39).

On January 21, 2025, Defendants filed a motion to dismiss the Amended Verified Complaint for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). (ECF No. 40) ("Br."). Plaintiff opposed the motion (ECF No. 45-46) ("Opp'n"), to which Defendants replied. (ECF No. 49) ("Reply").

These matters are now ripe for consideration.

## II.  <u>LEGAL STANDARD</u>

To survive a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff "bears the burden of demonstrating the facts that establish personal jurisdiction." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002) (citation modified). "However, when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have [all] allegations taken as true and [ ] factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) (citation modified).

Despite having all reasonable inferences drawn in its favor, the plaintiff cannot rely on the bare pleadings alone to defeat a defendant's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction. *Patterson v. FBI*, 893 F.2d 595, 604 (3d Cir. 1990) (citing *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 67 n.9 (3d Cir. 1984)). "A Rule 12(b)(2) motion . . . is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether in personam jurisdiction actually lies." *Patterson*, 893 F.2d at 603 (citing *Time Share Vacation Club*, 735 F.2d at 67 n.9). "Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." *Patterson*, 893 F.2d at 603-04 (citing *Time Share Vacation Club*, 735 F.2d at 67 n.9).

## III.   <u>DISCUSSION</u>

### A.   <u>Personal Jurisdiction</u>

"[A] federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state[ ]" so long as the jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (citation modified). "[T]o exercise personal jurisdiction over a defendant, a federal court sitting in diversity must undertake a two-step inquiry." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 258-59 (3d Cir. 1998). First, the court must apply the long-arm statute of the state in which it sits to determine whether exercising personal jurisdiction over the defendant is permitted. *Id.* Second, the court must evaluate whether exercising personal jurisdiction under the given circumstances would be consistent with the requirements of the Due Process Clause of the United States Constitution. *Id.* For a federal court sitting in New Jersey, "this inquiry is collapsed into a single step because the New Jersey long-arm statute permits the exercise of personal jurisdiction to the fullest limits of due process." *Id.*; *see also Miller Yacht Sales*, 384 F.3d at 96

(citing N.J. Ct. R. 4:4-4(c)); *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007).

Accordingly, personal jurisdiction over a non-resident defendant is proper in this Court if the defendant has "certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987) (quoting *International Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). Stated differently, to establish personal jurisdiction, the Due Process Clause requires (1) minimum contacts between the defendant and the forum; and (2) that jurisdiction over the defendant comports with "'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *International Shoe*, 326 U.S. at 320).

"[T]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King*, 471 U.S. at 474 (citing *International Shoe*, 326 U.S. at 316). A defendant must have "'fair warning'" that its conduct will subject it to the jurisdiction of a foreign court. *Burger King*, 471 U.S. at 472 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977)). A defendant's conduct and connection with the forum state must be such that the defendant "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (citation modified).

Once a plaintiff demonstrates a prima facie case of personal jurisdiction by establishing minimum contacts, the burden shifts to the defendant. In fact, once minimum contacts have been shown, jurisdiction is "presumptively constitutional." *O'Connor*, 496 F.3d at 324. A defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477.

Personal jurisdiction may be established by means of general jurisdiction or specific

jurisdiction over a defendant.[2] *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). If a defendant is subject to a forum's general jurisdiction, he or she can be sued there on any matter. *Id.* If, however, a defendant is solely subject to specific jurisdiction, he or she may only face suit in the forum if its activities concerning the forum are related to the claims in the suit. *Id.*

### i.    General Jurisdiction

"General (or 'all-purpose') jurisdiction permits a court to hear any and all claims against a defendant brought within a certain forum, even if those claims have nothing to do with any actions the defendant took in the forum." *Aldossari ex rel. Aldossari v. Ripp*, 49 F.4th 236, 257 (3d Cir. 2022) (citing *Goodyear*, 564 U.S. at 923). The sweeping "breadth" of such jurisdiction imposes one "correlative limit." *Ford Motor Co. v. Mont. Eight Jud. Dist. Ct.*, 592 U.S. 351, 358 (1945) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). The question is whether the defendant's "affiliations with the State are so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." *Daimler AG*, 571 U.S. at 127 (quoting *Goodyear*, 564 U.S. at 919); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984); *International Shoe*, 326 U.S. at 317. "[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler*, 571 U.S. at 137. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" *Goodyear*, 564 U.S. at 924 (citation modified). With respect to a corporation, the paradigmatic forum is the place of incorporation and principal place of business. *Daimler*, 571

---

[2] Personal jurisdiction can also be obtained through consent, waiver, or in-state service on an individual defendant. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 590-97 (1991) (regarding consent via a forum selection clause); *Burnham v. Superior Court of Cal.*, 495 U.S. 604, 628 (1990) (regarding in-state service); *In re Asbestos Prods. Liab. Litig. (No. VI)*, 921 F.3d 98, 104-05 (3d Cir. 2019) (regarding waiver); *Jasper v. Bexar Cnty. Adult Det. Cir.*, 332 F. App'x 718, 719 (3d Cir. 1999) (regarding consent).

U.S. at 137 (citation modified).

As a threshold matter, it is clear the Court lacks general jurisdiction over Defendants. (Br. at 15).[3] Plaintiff does not contest this point. (*See generally* Opp'n). Neither O'Brien nor Marcin reside in New Jersey. (*Id.*) Rather, O'Brien resides in Connecticut (O'Brien Supp. Decl. ¶ 2), and Marcin resides in Massachusetts (Marcin Supp. Decl. ¶ 2). Additionally, O'Brien and Marcin have never (i) lived in New Jersey; (ii) "owned real property in New Jersey"; (iii) maintained "investment accounts or other financial accounts in New Jersey"; (iv) never had "a New Jersey-based telephone listing"; (v) "registered to vote in New Jersey"; (vi) paid taxes in New Jersey; or (vii) maintained "an active license or certification to operate a wastewater treatment plant in New Jersey." (O'Brien Supp. Decl. ¶¶ 3-7; Marcin Supp. Decl. ¶¶ 3-7).

Defendants' contacts with New Jersey are not "so continuous and systemic" as to render Defendants essentially at home in the State; thus, the Court finds Defendants are not subject to general personal jurisdiction, *Daimler*, 571 U.S. at 127, and will confine the inquiry to whether to exercise specific jurisdiction over Defendants.

ii.    **Specific Jurisdiction**

"Specific" or "case-linked" jurisdiction depends on an affiliation between the forum state and the defendant's "suit-related conduct." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). "Specific jurisdiction exists when the claim arises from or relates to conduct purposely directed at the forum state." *Marten*, 499 F.3d at 296 (citing *Helicopteros*, 466 U.S. at 414-15, n.9). "A single contact that creates a substantial connection with the forum can be sufficient to support the exercise of personal jurisdiction over a defendant." *Miller Yacht Sales*, 384 F.3d at 96 (citing *Burger King*,

---

[3] For sake of clarity, when citing the parties' briefs and supporting documents, the Court cites to the page number listed in the ECF header. If there is no page number listed in the ECF header, the Court cites to the page number listed in the respective document.

471 U.S. at 475 n.18). But "[t]he contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'" *Ford*, 592 U.S. at 359 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)). Actual "[p]hysical presence within the forum is not required to establish personal jurisdiction over a nonresident defendant." *IMO Indus.*, 155 F.3d at 259.

The Third Circuit has laid out a three-part test to determine whether specific jurisdiction exists as to a particular defendant. *O'Connor*, 496 F.3d at 317. First, the defendant must have "purposefully directed [its] activities at the forum." *Id.* (citation modified). This factor has also been characterized as "purposeful availment," and focuses on contact that the defendant itself created within the forum state. *Burger King*, 471 U.S. at 475. The "purposefully directed" or "purposeful availment" requirement is designed to prevent a person from being haled into a jurisdiction "solely as [the] result of random, fortuitous, or attenuated contacts" or due to the "unilateral activity of another party or a third person[.]" *Id.* (citation modified) (citing *Keeton*, 465 U.S. at 774; *World-Wide Volkswagen Corp.*, 444 U.S. at 299; *Helicopteros*, 466 U.S. at 417). "Second, the plaintiff's claims 'must [also] arise out of or relate to' the defendant's activities." *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129 (3d Cir. 2020) (quoting *O'Connor*, 496 F.3d at 317); *see also Helicopteros*, 466 U.S. at 414. "[T]hird, exercising personal jurisdiction must not 'offend traditional notions of fair play and substantial justice.'" *Danziger*, 948 F.3d at 130 (quoting *O'Connor*, 496 F.3d at 317); *see also International Shoe*, 326 U.S. at 316.

As an alternative means of establishing specific jurisdiction, when an intentional tort is alleged, a slight variation from the *O'Connor* three-part test, known as the *Calder* effects test, applies, *O'Connor*, 496 F.3d at 317 n. 2, which stems from the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984). The *Calder* effects test "can demonstrate a court's jurisdiction over

11

a defendant even when the defendant's contacts with the forum alone [ ] are far too small to comport with the requirements of due process under our traditional analysis." *Marten*, 499 F.3d at 297 (citation modified); *see also IMO Indus.*, 155 F.3d at 265. Under *Calder*, "an intentional tort directed at the plaintiff and having sufficient impact upon [the plaintiff] in the forum may suffice to enhance otherwise insufficient contacts with the forum such that the 'minimum contacts' prong of the Due Process test is satisfied." *IMO Indus.*, 155 F.3d at 260. In *IMO Industries*, the Third Circuit held that the *Calder* effects test requires a plaintiff to show that:

> (1) The defendant committed an intentional tort; (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity[.]

155 F.3d at 265-66 (footnote omitted); *Hasson v. FullStory, Inc.*, 114 F.4th 181, 187 (3d Cir. 2024) (citing *Remick v. Manfredy*, 238 F.3d 248, 258 (3d Cir. 2001)). The *Calder* effects test, as interpreted by the Third Circuit, requires that a defendant's "'conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there.'" *Marten*, 499 F.3d at 297 (quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 297).

The Third Circuit recently clarified that, while *Calder*'s "effects" test is often applied "in assessing personal jurisdiction over intentional tortfeasors, . . . *Calder* [did not] carve out a special intentional torts exception to the traditional specific jurisdiction analysis." *Hasson*, 114 F.4th at 189 (citation modified) (alteration in original).[4] Accordingly, the Court will consider whether it has specific jurisdiction over Defendant under both the traditional test and the *Calder* "effects" test. *See id.* at 197 ("Though we agree with its application of *Calder*, the District Court also should

---

[4] The *Hasson* Court noted that "the 'effects' test has often been applied where the alleged tortfeasor has de minimis contacts with the forum, *see Marten*, 499 F.3d at 297, or where the tortious conduct occurs primarily 'outside the forum' but has an 'effect . . . within the forum,'" 114 F.4th at 189 (citing *IMO Indus.*, 155 F.3d at 261).

have considered whether specific personal jurisdiction was proper under the traditional test as applied in *Ford Motor*.").[5]

To assert specific personal jurisdiction, Plaintiff must allege "claim-specific jurisdiction over Defendant[ ]," meaning "an affiliatio[n] between the forum and the underlying controversy." *Christie v. Nat'l Inst. for Newman Stud.*, 258 F. Supp. 3d 494, 499 (D.N.J. 2017) (second alteration in original) (quoting *Walden*, 571 U.S. at 283 n.6). A court's inquiry into specific personal jurisdiction upon a motion to dismiss a complaint asserting various types of claims, including breach of contract and intentional torts, is carried out through claim-specific analyses. *See Remick v. Manfredy*, 238 F.3d 248, 255-56 (3d Cir. 2001) (holding that the district court should conduct "a claim-specific analysis" when "there are different considerations in analyzing jurisdiction over" those claims). Because specific personal jurisdiction analysis is claim-specific, the Court addresses Plaintiff's contract claims, and intentional tort claims in turn.

## 1. Specific Jurisdiction Under the Traditional Test

First, the Court assesses whether Defendants purportedly directed their activities at the forum, New Jersey. Plaintiff argues this first factor is satisfied because Defendants "knowingly and voluntarily": (i) "negotiated the terms of their employment (and their specific promotion agreements) with its headquarters in New Jersey"; (ii) "were supervised by, and received their job duties and instructions from, Veolia's New Jersey headquarters, including executives located

---

[5] The *Hasson* Court further noted that "[w]hile the 'effects' test and the traditional test 'are cut from the same cloth,' they have distinct requirements." 114 F.4th at 189 (citing *Marten*, 499 F.3d at 297). The Court further explained:

> [T]he effects test . . . require[s] that the tortious actions of the defendant have a forum-directed purpose[—a requirement that] is not applicable in the more traditional specific jurisdiction analysis . . . . Unlike th[e] express requirement in the effects test, the traditional specific jurisdiction analysis simply requires that the plaintiff's claims arise out of or relate to the defendant's forum contacts. We do not agree with the argument that this traditional requirement is the equivalent of *the more demanding relatedness requirement of the effects test.*

*Id.* (quoting *Miller Yacht*, 384 F.3d at 99).

there"; (iii) "regularly met and communicated with Veolia executives in New Jersey in furtherance of these operational responsibilities"; (iv) "regularly travelled to New Jersey for meetings as part of their job responsibilities"; and (vi) "in O'Brien's case, was responsible for and actively supervised a number of projects, facilities and employees in New Jersey." (Opp'n at 15-21). Defendants argue, to the contrary, that these contacts do not meet the threshold minimum contacts for specific jurisdiction. (Br. at 16-25).

The Court has reviewed the parties' competing declarations and documentary evidence in support of their respective arguments. Plaintiffs, in pertinent part, submitted declarations of Morris, the former President, Northeast Region, Municipal Water for Veolia, and Jason Kiernan ("Kiernan"), an Area Manager operating out of Bayonne, New Jersey. (*See* Morris Decl.; Declaration of Jason Kiernan ("Kiernan Decl.") ECF No. 45-6). O'Brien and Marcin each submitted declarations disputing their contacts with New Jersey. (*See* O'Brien Supp. Decl.; Marcin Supp. Decl.). As discussed *infra*, the record before the Court presents two vastly different representations of O'Brien and Marcin's contacts with New Jersey.

With respect to O'Brien, Morris attests O'Brien, while working for Suez, was promoted in December 2019 to General Manager/Vice President for the Northeast, whereby he reported to Xavier Castro ("Castro"), the Environmental Services Division President, who worked in Suez's Paramus, New Jersey headquarters. (*Id.* at ¶ 5). Morris attached emails to her declaration that represented email communications between O'Brien and Castro concerning "regular, bi-weekly, individual meetings" whereby O'Brien advised Castro about the status of the projects he supervised. (*Id.* at ¶ 6; Morris Decl. Ex. B). Morris also attached emails and calendar invitations representing O'Brien's attendance at regular Senior Leadership Team ("SLT") meetings that were "normally conducted virtually and led by personnel from Paramus, New Jersey." (*Id.* at ¶ 7; Morris

14

Decl. Ex. C). Morris also attested O'Brien was responsible for over 100 New Jersey employees and "all municipal water projects in the northeast, including those in Bayonne, Rahway, Orange, Hoboken, and Jersey City, New Jersey," which led him to be the point of contact for Suez's New Jersey customers. (*Id.* at ¶¶ 8, 11, 12-14).

In 2022, Morris attested "O'Brien continued working for Suez under its new name, Veolia Water Operations USA, Inc., and his position changed to Vice President." (*Id.* at ¶ 15). In this position, O'Brien reported to Morris, who operated out of the Paramus Headquarters. (*Id.* at ¶¶ 16-17). Morris attested to having one-on-one meetings with O'Brien throughout 2022 and 2023, and O'Brien attended and participated in other calls, meetings, and dinners, some of which were remote and others taking place in person, with Veolia employees who were based in Veolia's Paramus, New Jersey Headquarters. (*Id.* at ¶¶ 21-33).

Additionally, Kiernan attested he "reported directly to [O'Brien] as an Area Manager" and "[a]t the time, there were more than 100 New Jersey employees working on the projects for which Mr. O'Brien was ultimately responsible." (Kiernan Decl. ¶¶ 2, 5). Kiernan also attached emails to his declaration that confirmed accepted Microsoft Teams meetings between O'Brien and Kiernan (O'Brien Supp. Decl., Ex. A), and O'Brien and John Hroncich, a "New Jersey-based project manager who ran the municipal water project in Jersey City, New Jersey." (*Id.* at ¶ 4; Kiernan Decl., Ex. B).

In contrast, O'Brien attested he initially worked for AOS Operating Services from 2000 to 2007, which in 2007, was acquired by United Water and assumed the name Suez thereafter. (O'Brien Supp. Decl. ¶¶ 10-11). While working for Suez, O'Brien's office was in Newtown, Connecticut. (*Id.* at ¶ 12). O'Brien was subsequently promoted to General Manager/VP "[i]n late 2019 or early 2020[,]" whereby he "supervised all of Suez's water projects in the Northeastern

15

United States[,]" with "approximately 35 projects in [his] portfolio."[6] (*Id.* at ¶ 14). Thereafter, in March 2022, "Suez's ultimate parent merged with Veolia's ultimate parent." (*Id.* at ¶ 19). Veolia ultimately assigned O'Brien to the role of Regional Vice President, Northeast Region whereby he oversaw a total of "about 15" projects, "some projects in Connecticut and two projects in Massachusetts." (*Id.* at ¶ 24). In this new position, O'Brien's primary work location remained Newtown, Connecticut. (*Id.* at ¶ 29).

O'Brien's declaration also includes contradicting information from that of Morris and Kiernan. For example, O'Brien, "[a]s best [as he] c[ould] recall, . . . visited [the New Jersey] office four times per year." (*Id.*) Most of O'Brien's communications with Morris, his direct supervisor, were "either remote or telephonic," and the parties "communicated by telephone or text message as needed and had biweekly one-on-one virtual meetings." (*Id.* at ¶¶ 30-31). O'Brien and Morris "met in person approximately twice per quarter at the project sites [he] supervised in Connecticut and Massachusetts[,]" and "met approximately once per quarter in New Jersey, but those meetings were usually in group settings rather than one-on-one." (*Id.* at ¶ 31). Additionally, O'Brien attested that from approximately March 2022, until his separation from Veolia, he "did not oversee customer projects in New Jersey or otherwise work with customers in New Jersey[,]" or "supervise employees in New Jersey." (*Id.* at ¶¶ 32, 47). O'Brien's "occasional contacts with Veolia personnel in New Jersey were not important to performing [his] job with Veolia." (*Id.* at ¶ 33). Moreover, O'Brien disputes statements concerning his job duties prior to the Suez-Veolia merger, including his meetings with area managers and project managers that reported to him and certain meetings that Morris attested took place in New Jersey. (*Id.* at ¶ 48). O'Brien also did not recall having "regular interactions" with executives, other than Morris, after becoming Regional Vice President,

---

[6] O'Brien attested he signed the offer letter for the General Manager/VP position in Connecticut. (O'Brien Supp. Decl. ¶ 15).

Northeast Region, until his separation from Veolia. (*Id.* at ¶ 49).

With respect to Marcin, Morris attests Marcin, while working for Suez, was promoted in January 2020 to Area Manager – Norwalk, whereby he reported to O'Brien, and O'Brien reported to Castro, who worked out of Suez's Paramus, New Jersey headquarters. (*Id.* at ¶ 37). According to Morris, Marcin received his promotion letter from a Human Resources Business Partner who was working, at the time of the letter, from Suez's Paramus, New Jersey Headquarters. (*Id.* at ¶ 38). As an Area Manager, Marcin "regularly interacted with the finance team, which operated out of Paramus, New Jersey, and participated in monthly budget calls that were conducted and led by supervisory personnel from Paramus, New Jersey." (*Id.* at ¶ 39). Morris also attested to meeting with Marcin in New Jersey in August and September 2022, regarding a position of Vice President of Business Development. (*Id.* at ¶¶ 41-42). While Marcin asserts otherwise, Morris affirms Marcin "enthusiastically accepted" his promotion to Senior Director of Business Development, which was negotiated between Marcin and the Director of Human Resources who operated out of the Paramus, New Jersey headquarters. (*Id.* at ¶¶ 44-45). As Senior Director of Business Development, Marcin "work[ed] directly with executives in Paramus, New Jersey" and attended a workshop, conference, and meetings in New Jersey throughout 2023. (*Id.* at ¶¶ 47-50).

In contrast, Marcin attested that he initially began working for United Water in 2005, which in turn adopted the name Suez in 2007. (Marcin Supp. Decl. ¶ 10). While working for Suez, Marcin primarily worked out of his home office in Lexington, Massachusetts until 2020. (*Id.* at ¶ 13). When Marcin became Area Manager for the Norwalk, Connecticut project in early 2020, he became responsible for managing the Nowalk project and his principal work location was Norwalk, Connecticut. (*Id.* at ¶ 14). After Suez and Veolia merged, Marcin's "primary work locations continued to be Norwalk, Connecticut and Lexington, Massachusetts." (*Id.* at ¶ 21).

During his years working for Veolia, Marcin "made, at most, a handful of sporadic visits to the Paramus office, or other places in New Jersey[.]" (*Id.*) Additionally, Marcin did not recall ever meeting with O'Brien, his direct supervisor, in New Jersey. (*Id.* at ¶ 23). Marcin also attested he did not work with any Veolia customers in New Jersey, "attempt to develop business for Veolia from new customers in New Jersey[,]" or attend "any in-person job interviews in New Jersey." (*Id.* at ¶¶ 24-25).

Marcin explicitly contradicts multiple assertions set forth in Morris's declaration. For instance, Marcin attested his "very limited contacts with Veolia personnel in New Jersey were not important to performing [his] job with Veolia." (*Id.* at ¶ 26). Marcin also attested he did not interview in August 2022 for the Vice President of Business Development position in New Jersey; rather, he "attended an information discussion about whether [he] might potentially become a candidate for that role." (*Id.* at ¶ 65(a)). According to Marcin, he also did not sign any drafts of the offer letter Veolia provided him for the Senior Director of Business Development position because he had concerns with provisions in the offer letter and did not believe he was bound by the offer letter, and as such, did not accept the position. (*Id.* at ¶¶ 32-48, 65(b)). Additionally, Marcin disputes his involvement and interactions in a New Jersey conference and meetings that Morris claims he participated in. (*Id.* at ¶¶ 66-67).

Given the parties' contradicting descriptions of Defendants' interactions with New Jersey, the Court is unable to determine, based on the present record, whether Defendants purposefully directed their activities at New Jersey. The parties dispute key issues relating to O'Brien, such as the extent of his interactions with New Jersey-based Veolia employees and clients while working for Veolia, his presence in New Jersey for meetings, and his involvement in Veolia's New Jersey projects. Additionally, the parties dispute key issues relating to Marcin, such as the extent of his

contacts with Veolia employees in New Jersey, whether he interviewed for the Vice President of Business Development in New Jersey, whether he accepted the role of Senior Director of Business Development, and whether he participated in a New Jersey conference and various meetings while working for Veolia.

"[T]he District Court 'has considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction.'" *Judon v. Travelers Property Cas. Co. of Am.*, 773 F.3d 495, 509 (3d Cir. 2014) (quoting *Liberty Mut. Ins. Co. v. Ward Trucking Corp.*, 48 F.3d 742, 756 (3d Cir. 1995)). "[J]urisdictional discovery should be allowed unless the plaintiff's [jurisdictional] claim is 'clearly frivolous.'" *Massachusetts Sch. of L. at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997) (quoting *Nehemiah v. The Athletics Congress*, 765 F.2d 42, 48 (3d Cir. 1985)); *Smith v. HSN, Inc.*, No. 20-12869, 2020 WL 7022640, at *7 (D.N.J. Nov. 30, 2020) ("Courts have 'resorted to the fallback principle that jurisdictional discovery should be permitted where a claim of jurisdiction is not "clearly frivolous."'" (quoting *Lee v. Cent. Parking Corp.*, No. 15-0454, 2015 WL 4510128, at *1 (D.N.J. July 24, 2015))). Jurisdictional "discovery is appropriate . . . if a plaintiff 'presents factual allegations that suggest "with reasonable particularity" the possible existence of the requisite "contacts between [the party] and the forum state."'" *Aquino v. Breede*, No. 23-2459, 2023 WL 7195173, at *3 (D.N.J. Nov. 1, 2023) (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)). "'Information available in [jurisdictional] discovery may help moor both sides' intuitions in the available data.'" *Smith*, 2020 WL 7022640, at *7 (quoting *Lee*, 2015 WL 4510128, at *1).[7]

---

[7] The Court notes that jurisdictional discovery has been found particularly appropriate where the defendant is a corporation. *See Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances*, 723 F.2d 357, 362 (3d Cir. 1983). The Court also recognizes "[w]here the defendant is an individual, the presumption in favor of [jurisdictional] discovery is reduced." *Massachusetts Sch. of L.*, 107 F.3d at 1042 (citing *Shaw v. Boyd*, 658 F. Supp. 89, 91 n.1 (E.D. Pa. 1987)). Notwithstanding, the Court finds jurisdictional discovery is warranted here as there are entirely different factual records submitted by the parties with respect to Defendants' contacts with New Jersey while working for Veolia.

Here, the record before the Court contains sufficient non-frivolous allegations to support jurisdictional discovery. "It is well established that in deciding a motion to dismiss for lack of jurisdiction, a court is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff." *Toys "R" Us*, 318 F.3d at 457 (citing *Pinker*, 292 F.3d at 368). Upon review of the Amended Verified Complaint, the Court finds Plaintiff presents factual allegations that suggest with reasonable particularity the *possible* existence of the requisite contacts between Defendants and New Jersey. Factual determinations persist with respect to O'Brien regarding disputed issues such as the extent of his interactions with New Jersey Veolia employees and clients while working for Veolia; his presence in New Jersey for meetings; and his involvement in Veolia's New Jersey projects. Similarly, with respect to Marcin, factual determinations persist regarding disputed issues such as his contacts with Veolia employees in New Jersey; whether he interviewed for the Vice President of Business Development in New Jersey; whether he accepted the role of Senior Director of Business Development; and whether he participated in a New Jersey conference and various meetings while working for Veolia.

These issues must be fleshed out throughout discovery, as these are important facts that will inform whether specific jurisdiction over Defendants is proper under the traditional and *Calder* effects test. Plaintiff should have the opportunity to conduct jurisdictional discovery before the Court makes a final determination with respect to whether it may exercise jurisdiction over Defendants.

Accordingly, the Court will deny Defendants' motion to dismiss on jurisdictional grounds and permit limited jurisdictional discovery.[8]

---

[8] The Court notes the issue of personal jurisdiction "must [be] address[ed] before the Court addresses the merits of the preliminary injunction." *Zangara v. Nat'l Bd. of Med. Exam'rs*, No. 22-1559, 2023 WL 2868223, at *4 (D.N.J. Apr. 6, 2023) (citing *In re Diet Drugs Prods. Liab. Litig.*, 282 F.3d 220, 229-30 (3d Cir. 2002) ("[P]reliminary matters such as . . . personal jurisdiction . . . should be raised and disposed of before the court considers the merits or quasi-merits

IV. <u>**CONCLUSION**</u>

For the reasons set forth above, Defendants' motion to dismiss (ECF No. 40) is **DENIED without prejudice** to allow the parties to conduct jurisdictional discovery. Plaintiff's motion for a preliminary injunction (ECF No. 3) is **ADMINSTRATIVELY TERMINATED**, subject to the results of the Court's ruling on the motion to dismiss for lack of personal jurisdiction.

DATED:        9/26/2025

HONORABLE JULIEN XAVIER NEALS
United States District Judge

---

of a controversy." (citation modified))). Accordingly, the Court administratively terminates Plaintiff's motion for a preliminary injunction (ECF No. 3), subject to the results of the Court's ruling on the motion to dismiss for lack of personal jurisdiction. (ECF No. 40).